UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MTD PRODUCTS INC.** | ) | Civil Action No. |
| | ) | |
| **and** | ) | |
| | ) | |
| **F. ROBOTICS ACQUISITIONS LTD.,** | ) | |
| | ) | **VERIFIED COMPLAINT FOR** |
| | ) | **DECLARATORY JUDGMENT OF** |
| Plaintiffs, | ) | **NON-INFRINGEMENT OF A** |
| | ) | **REGISTERED TRADEMARK AND FOR** |
| v. | ) | **TORTIOUS INTERFERENCE WITH** |
| | ) | **BUSINESS RELATIONSHIPS AND** |
| **FUTUREGENROBOTICS, LLC** | ) | **EXPECTATIONS** |
| | ) | |
| **and** | ) | |
| | ) | |
| **MICHAEL LETSKY,** | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs MTD Products Inc. ("MTD") and F. Robotics Acquisitions Ltd. ("FRA"), for their Complaint against Defendants, Futuregenrobotics, LLC ("FGR") and Michael Letsky ("Letsky"), state as follows:

### Nature of the Action

1.    Plaintiffs are marketing robotic lawnmowers that are configured to be used with a downloadable mobile smartphone application.  The lawnmowers are marketed under MTD's

CUB CADET® brand and FRA's ROBOMOW® brand in the United States and internationally, including significant sales in Europe.

2.       Defendant FGR, a competitor in the robotic lawnmower market, accused Plaintiffs of infringing FGR's purported trademark rights in the term "SmartMow" because Plaintiffs were using the term "Smart Mow" to describe one operating mode of their CUB CADET® and ROBOMOW® robotic lawnmowers.

3.       Plaintiffs did not believe then and do not believe now that their descriptive use of the term "Smart Mow" infringed any trademark rights Defendant FGR might have, but rather than expending time, money and resources fighting with FGR about it, Plaintiffs made a unilateral decision to switch to use of the term "Smart Mode" instead to describe the operating mode in question.  FGR then insisted that the descriptor "Smart Mode" also infringed its claimed trademark rights.

4.       Faced with a competitor that seems intent on misusing its purported trademark rights, Plaintiffs seek declaratory judgment that their use of the term "Smart Mode" solely to describe an operating mode of their robotic lawnmowers does not infringe Defendant FGR's purported trademark rights in the term "SmartMow" on the grounds that use of the term is a protected fair use.

5.       Plaintiffs also seek monetary and injunctive relief, including interlocutory injunctive relief, on a claim of tortious interference with business relationships and expectancies because Defendants refuse to authorize Apple, Inc. ("Apple") to return to its App Store certain of the mobile smartphone applications needed to fully operate Plaintiffs' CUB CADET® and ROBOMOW® robotic lawnmowers despite the fact that the applications themselves no longer make any use of the term "Smart Mow."  Existing and prospective end-users of Plaintiff's CUB

CADET® and ROBOMOW® robotic lawnmowers who use smart devices with Apple's iOS operating system ("Apple Devices") can no longer access, use or update the applications. This is interfering with their ability to use and/or evaluate for purchase CUB CADET® and ROBOMOW® lawnmowers and thus is disrupting Plaintiffs' business and harming its goodwill and reputation.  Additionally, the inability of users of Apple Devices to update the applications in question creates a potential threat to public safety.

**The Parties**

6.     Plaintiff MTD is a corporation organized under the laws of the State of Delaware having offices at 5903 Grafton Road, Valley City, Ohio 44280.

7.     Plaintiff FRA is a corporation organized under the laws of Israel having offices at Hatzabar Street, Pardesiya Industrial Zone, Pardesia, Israel 4281500. FRA is a wholly-owned downstream subsidiary of MTD.

8.     On information and belief, Defendant FGR is a limited liability company organized under the laws of the State of Florida having its principal place of business at 20423 State Road 7, Suite F6, #356, Boca Raton, Florida 33498.

9.     On information and belief, Defendant Letksy is an individual residing in the State of Florida with a residence at 20256 Hacienda Court, Boca Raton, Florida 33498.

10.    On information and belief, Defendant Letsky is, and at all times material to the Claims asserted herein has been, an officer, director and/or part or sole owner of Defendant FGR, and Letsky personally participated in, directed, authorized and/or ratified the acts, omissions, and other conduct of Defendant FGR complained of herein.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332(a), 2201 and 2202.  The First Claim for Relief presents federal questions that arise under the Lanham Act and the Declaratory Judgment Act.  Diversity jurisdiction pursuant to 15 U.S.C. § 1332(a) exists with respect to the Second Claim for Relief because Plaintiffs and Defendants are citizens of different states and the amount in controversy is greater than $75,000 exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants because their contacts with the State of Ohio and this Judicial District are of such a nature that this Court's exercise of personal jurisdiction over them does not offend traditional notions of fair play and substantial justice.

13.     Additionally or alternatively, this Court has personal jurisdiction over Defendants pursuant to one or more provisions of the Ohio Long Arm Statute, O.R.C. § 2307.382.

14.     Defendants regularly solicit business in the State of Ohio and in this Judicial District inasmuch as they advertise and promote their products in the State of Ohio and in this Judicial District, including on their websites, smartmow.com. and futuregenrobotics.com, which products include but are not limited to the robotic lawnmower products for which FGR is claiming trademark rights in the term "SmartMow," a claim that is central to of both of the Claims asserted by Plaintiffs in this Action.

15.     Defendants have been engaging in a persistent course of conduct directed into the State of Ohio and into this Judicial District inasmuch as they have, since at least August 2018, directed a series of oral, written and electronic communications to representatives of Plaintiff MTD, which is headquartered in the State of Ohio and this Judicial District, as part of

4

Defendants' efforts to interfere with lawful competition from Plaintiffs and disrupt Plaintiffs' robotic lawnmower business.

16.     Defendants' conduct complained of herein is causing tortious injury to Plaintiffs in the State of Ohio and in this Judicial District.  Plaintiff MTD is headquartered and resides in the State of Ohio and this Judicial District.  MTD's goodwill and reputation, and that of its wholly-owned subsidiary, FRA, have been injured in the State of Ohio and this Judicial District, and any economic harm to Plaintiffs have been inflicted upon them there as well.

17.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to the claims asserted by Plaintiffs occurs in this Judicial District.

### Plaintiffs' Use of the Term SMART MODE to Describe a Feature of their Robotic Lawnmowers

18.     For more than fifty years, Plaintiff MTD has been a leader in designing and building durable, easy-to-use outdoor power equipment.  The MTD family of brands offers award-winning products designed to meet lawn and garden needs for both residential and commercial products.  Among the many products available from MTD are lawn mowers, including but not limited to robotic lawnmowers marketed under the CUB CADET and ROBOMOW brands.

19.     Plaintiffs' robotic lawnmowers operate autonomously and are configured to be used with a downloadable mobile smartphone application.  The smartphone application allows the end-user to communicate over a wireless network with a mower from a smartphone or other mobile device capable of wireless communication.  These mowers can be controlled, programmed, updated and serviced by the end-user through the associated smartphone

5

application. A detailed description of the convenience and functionality of the associated smartphone application is an integral part of Plaintiffs' marketing of their robotic lawnmowers.

20. While Plaintiffs' robotic lawnmowers have a physical user interface, the use of an associated smartphone application by the end-user is necessary to access and control at least some of the available mower operations and features. Without access to the associated smartphone application, the end-user of one of Plaintiffs' robotic lawnmowers is denied the full convenience and functionality of the mower and, as a consequence, the full value of the mower. The inability to update Plaintiffs' robotic lawnmowers through the associated smartphone application may prevent Plaintiffs from providing end-users with important product updates, including but not limited to updates that improve the safety of the mowers.

21. Plaintiffs' robotic lawnmowers are programmed in advance with certain capabilities and features. For example, the mowers operate in a working area defined by a boundary, and the mowers have sensing and data processing capabilities that, among other things, allow the mowers to detect the boundary and take certain programmed actions as a result. One of the programmed actions that can be taken by Plaintiffs' robotic lawnmowers is embodied in a mode of operation that is currently described by Plaintiffs as the "Smart Mode."

22. In "Smart Mode" Plaintiffs' customers use the mobile smartphone application associated with their CUB CADET® or ROBOMOW® robotic lawnmower to selectively enable it to operate in the following programmed fashion: when a mower that is approaching a boundary determines that it is a certain prescribed distance from the boundary, the mower commences a smooth, continuous gradual turn rather than proceeding all of the way to the boundary, stopping and turning. The mode of operation that Plaintiffs describe as "Smart Mode" makes use of patented inventions that reduce energy consumption, saves time, and can reduce wear and tear on

the mower's components.  Under certain mowing conditions and/or circumstances users of Plaintiffs' robotic lawnmowers may wish to enable or disable "Smart Mode" via the associated smartphone application to optimize mowing performance and results.  Attached hereto as Exhibit 1 is a true and correct copy of the applicable patent, U.S. Patent No. 9,268,331 (the "'331 Patent"), which is owned by Plaintiff FRA and used by Plaintiff MTD with FRA's authorization.

23.     The "Smart Mode" functionality of Plaintiffs' robotic lawnmowers originally was described as "Smart Mow."  Plaintiff FRA began using the term "Smart Mow" in 2014 to describe the mode of operation of its ROBOMOW® mowers that embodies some of the inventions of the '331 Patent.  After Plaintiff MTD acquired ownership of FRA in 2017, use of the term "Smart Mow" was expanded to also describe a mode of operation of MTD's CUB CADET® mowers into which some of the patented inventions of the '331 Patent had been incorporated.

24.     In or about August 2019, Plaintiffs unilaterally decided to switch the descriptor for the mode of operation in issue from "Smart Mow" to "Smart Mode."  The decision was motivated by Plaintiffs' desire to avoid the need for expensive and likely time-consuming litigation with Defendant FGR over Plaintiffs' descriptive use of "Smart Mow."

### The "Smart Mow" Dispute

25.     In or about August 2018, Defendant Letsky began to complain informally to certain MTD employees about Plaintiffs' use of the term "Smart Mow" to describe a mode of operation of Plaintiffs' robotic lawnmowers.

26.     On October 1, 2018, and at the time unbeknownst to Plaintiffs, Defendant FGR filed a use-based application with the United States Patent and Trademark Office ("USPTO") requesting registration of the term "SmartMow" as a mark used on or in connection with "lawn

7

mowers; robotic lawnmowers."  In support of its application, FGR claimed a first use in commerce date of "at least as early as March 1, 2009."  A true and correct copy of the application filed by Defendant FGR is attached hereto as Exhibit 2.

27.     On information and belief, because FGR was not formed as a legal entity until on or about October 16, 2017, FGR itself could not have made use in commerce of the term "SmartMow" as a mark on or in connection with lawn mowers or robotic lawnmowers at any time prior to October 16, 2017.  A true and correct copy of Defendant FGR's Articles of Organization is attached hereto as Exhibit 3.

28.     In support of its use-based application to register the term "SmartMow," FGR submitted a specimen of use that FGR described to the USPTO as "[w]ebsite pages displaying the mark as used in commerce."  A true and correct copy of the electronic records of the USPTO available online of this purported specimen of use in commerce of the word "SmartMow" is attached hereto as Exhibit 4.  The purported specimen of use submitted by FGR indicates on its face that the product described in the specimen was not as of the date shown thereon (September 24, 2018) available for purchase inasmuch as it indicates that the product was merely available to "Reserve Now."  As of the date this Verified Complaint was filed, it does not appear that Defendant FGR has any lawnmower products available for purchase.  A true and correct copy of printouts from FGR's smartmow.com website showing every product as "backordered" is attached hereto as Exhibit 5.

29.     On May 14, 2019, the USPTO registered the mark "SmartMow" for "lawn mowers; robotic lawnmowers" and issued U.S. Trademark Registration No. 5,750,819 (the "'819 Registration") to Defendant FGR.  A true and correct copy of the registration certificate as shown in the electronic records of the USPTO available online is attached hereto as Exhibit 6.

8

30.     On May 15, 2019, Defendant Letsky sent an email to The Home Depot, Inc. ("Home Depot"), a retailer of Plaintiffs' ROBOMOW® robotic lawnmowers, claiming that the use of the term "Smart Mow" by Plaintiffs in connection with a feature of ROBOMOW® robotic lawnmowers infringed Defendant FGR's purported trademark rights in "SmartMow" and demanded that Home Depot remove the products from its sales channels immediately.  A true and correct copy of the email to Home Depot is attached hereto as <u>Exhibit 7</u>.  A similar communication was sent by Defendant Letsky to another retailer of ROBOMOW® robotic lawnmowers, Wellbots Inc., on May 24, 2019.  A true and correct copy of the email to Wellbots Inc. is attached hereto as <u>Exhibit 8</u>.

31.     On information and belief, on May 21, 2019, Defendant FGR submitted an "App Store Content Dispute" claim to Apple claiming that Plaintiffs use "the word SmartMow or Smart Mow as a feature in an App for a robot lawn mower.  This use infringes [the '819 Registration]."  FGR made the same claim with respect to four of Plaintiffs' applications in the App Store: (1) Cub Cadet XR; (2) Cub Cadet XR 2.0; (3) Robomow App; and (4) Robomow App 2.0 (collectively, the "Challenged Apps").  At that point in time, all four of the Challenged Apps were available in Apple's App Store.  Apple notified Plaintiffs of the claim against the Challenged Apps on May 22, 2019.  A true and correct copy of the notice received by Plaintiffs from Apple is attached hereto as <u>Exhibit 9</u>.

32.     On its face, use of Apple's App Store Content Dispute policy is limited to situations where the party lodging a claim believes "an application or Search Ad available in the App Store" violates the lodging party's intellectual property rights.  Content that infringes on intellectual property is a violation of the rules governing availability of applications in the Apple App Store and are subject to removal.  A true and correct copy of the page on the apple.com

website that describes the claims that may be lodged under the policy is attached hereto as Exhibit 10.

33.     When someone lodges a claim under Apple's App Store Content Dispute process, Apple provides the claimant's contact information to the developer of the app or apps in question and expects the claimant and developer to work out the underlying intellectual property dispute between themselves.  Apple asks that it be kept apprised of any progress the parties make toward a resolution.

34.     As stated in the notice that Plaintiffs received of Defendant FGR's complaint, to resolve the claims lodged by FGR against the Challenged Apps, Apple requires either "confirmation that [the Challenged Apps] do not infringe [FGR's] rights, an express authorization from [FGR], or other evidence acceptable to Apple, and include documentation wherever possible.  See Exhibit 9.

35.     Only after first going after some of Plaintiffs' retailers and after complaining to Apple about the Challenged Apps, did Defendant FGR, through legal counsel, send Plaintiff MTD a formal cease and desist demand letter dated May 29, 2019 accusing Plaintiffs of infringing FGR's purported trademark rights in "SmartMow" (the "Smart Mow Dispute").  A true and correct copy of this letter is attached hereto as Exhibit 11.

36.     Subsequent to Plaintiffs' receipt of the May 29, 2019 cease and desist letter, the parties communicated with each other with respect to the Smart Mow Dispute and with Apple with respect to Defendant FGR's claims against the Challenged Apps.

37.     On October 3, 2019, Defendant Letsky sent an email to Apple asking for "an update with in (sic) the next 3 business days before we decide to take more action."  Plaintiffs were copied on the email.  A true and correct copy of this email is attached hereto as Exhibit 12.

On information and belief, this communication by Letsky to Apple was intended to prompt Apple to remove the Challenged Apps from the App Store in an improper effort to gain leverage in Defendants' efforts to secure a resolution to the Smart Mow Dispute.

### The Actual and Justiciable Controversy Between the Parties

38.     Until late October 2019, purchasers and prospective purchasers of Plaintiffs' CUB CADET® and ROBOMOW® robotic lawnmowers using Apple Devices were able to download the Challenged Apps from Apple's App Store.   Purchasers and prospective purchasers with Apple Devices could access the Challenged Apps in the App Store either by way of a direct link on Plaintiffs' dedicated ROBOMOW website or by running an internet or App Store search for the desired application.  The presence of the Challenged Apps in the App Store allowed users of Apple Devices to receive notice of and install updates to the Challenged Apps, including updates that might relate to consumer safety.

39.     On or about October 25, 2019, Apple removed all four of the Challenged Apps from the App Store.  At the time, Plaintiffs were still in the midst of implementing the switch from use of "Smart Mow" to use of "Smart Mode" to describe the mode of operation of Plaintiffs' robotic lawnmowers in issue.

40.     On October 28, 2019, Apple sent Plaintiffs a communication indicating that the Challenged Apps had been removed from the App Store because Apple had not received confirmation from Defendant FGR that the claim lodged by FGR under Apple's App Store Content Dispute policy had been resolved.   A true and correct copy of this communication is attached hereto as Exhibit 13.

41.     Shortly after Apple removed the Challenged Apps from the Apple App Store in late October 2019, Plaintiffs had available new versions of two of the Challenged Apps (Cub

11

Cadet XR 2.0 and Robomow App 2.0, collectively the "Revised Challenged Apps") for Apple

Devices that had fully replaced the term "Smart Mow" with the term "Smart Mode."




ROBOMOW APP 2.0                    CUB  CADET XR 2.0

A true and correct copy of screen shots showing the use of "Smart Mode" in place of "Smart

Mow" is attached hereto as Exhibit 14.

42.     In a communication dated October 31, 2019 directed to Apple but copied to

Defendant Lestsky and legal counsel for Defendants, Plaintiffs informed Apple that the term

"Smart Mow" had been purged from the Revised Challenged Apps, thus resolving the only

purportedly legitimate dispute that could be raised under Apple's App Store Content Dispute

policy with respect to those applications, and requested that the Revised Challenged Apps be

returned to the App Store as soon as possible.  A true and correct copy of this communication is

attached hereto as Exhibit 15.

43.     Notwithstanding the purge of the term "Smart Mow" from the Revised Challenged Apps, Defendants failed to authorize Apple to return those applications to the App Store.  In a communication dated October 31, 2019, Defendant Lesky admitted that the refusal to authorize the return of the Revised Challenged Apps was based at least in part on aspects of the Smart Mow Dispute <u>not</u> arising out of the content of the mobile applications themselves.  A true and correct copy of this communication is attached hereto as <u>Exhibit 16</u>.

44.      On November 6, 2019, Plaintiffs shared the screenshots shown above in paragraph 41 demonstrating the substitution of the term "Smart Mode" for the term "Smart Mow" in the Revised Challenged Apps with Apple, Defendant Letsky, and legal counsel for Defendants.  A true and correct copy of this communication is attached hereto as <u>Exhibit 17.</u>

45.     Despite being provided with evidence that the Revised Challenged Apps had been purged of the term "Smart Mow," and, on information and belief, relying on factors other than the content of the Revised Challenged Apps, Defendants persisted in their refusal to authorize Apple to return the Revised Challenged Apps to the App Store.  A true and correct copy of Defendant Letsky's email dated November 6, 2019 reiterating Defendants' refusal to authorize the return of the Revised Challenged Apps to the App Store is attached hereto as <u>Exhibit 18</u>.

46.     As of the date this Action was filed, none of the Revised Challenged Apps have been returned to the Apple App Store.

47.     As of the date this Action is filed, a purchaser or prospective purchaser of a ROBOMOW® robotic lawnmower that clicks on the ROBOMOW website's dedicated link to the Apple App Store gets a notice that the application is not available in their country or region:



Purchasers or prospective purchasers that perform an online search for any of the four Challenged Apps get the same notice.

48.     Even though the removal of the Challenged Apps from the Apple App Store is very recent, Plaintiffs have already begun to receive complaints from the distribution chain and the marketplace for CUB CADET® and/or ROBOMOW® robotic lawnmowers about the lack of access to the Challenged Apps for users of Apple Devices.  True and correct copies of some of these complaints are attached hereto as Exhibit 19.

49.     The Apple App Store has at all times material hereto been the only application store or mechanism that offers any of the Challenged Apps for download or updating by users of Apple smartphones and other smart Apple mobile devices.

50.     The absence of the Revised Challenged Apps from the Apple App Store makes it impossible for owners, end-users or prospective owners and end-users who have Apple devices to download, use and update the Revised Challenged Apps, which in turn adversely affects their ability to use or evaluate for purchase Plaintiffs' robotic lawnmowers. As a consequence, Plaintiffs are incurring substantial expenses and diverting resources that would otherwise be devoted to other business purposes in an effort to mitigate losses and address the concerns of upset distributors and customers.  However, Plaintiffs have not yet been able to determine whether it is practicable to create an alternative method of access and if it is when such an effort will succeed.

4841-8295-9789, v.1

51.     The absence of the Revised Challenged Apps from the Apple App Store is damaging and otherwise causing harm to Plaintiffs, both economically and to Plaintiffs' reputation and goodwill.  Users of Apple Devices that already own one of Plaintiffs' ROBOMOW® or CUB CADET® robotic lawnmowers attempting to download the Revised Challenged Apps will be confronted by a notice that they are not available.  Such users will not get notice of or the opportunity to download updates and are thus denied access to improvements and additions to the functionality and convenience of their robotic lawnmower and the mobile smartphone applications associated therewith.  Some of the improvements that Plaintiffs might make could relate to product safety, in which case the inability of users to access the Revised Challenged Apps might pose a threat to consumer safety.  Prospective purchasers with Apple devices that attempt to preview one of the Revised Challenged Apps in the App Store will also be confronted with the "not available" notice, which may cause them to question the veracity of Plaintiffs' promotional efforts and/or move on to evaluate products offered by Plaintiffs' competitors whose associated mobile smartphone applications are available in the App Store.

## FIRST CLAIM FOR RELIEF

### (Request for Declaratory Judgment of Non-Infringement of Trademark Pursuant to 28 U.S.C. § 2201)

52.     Plaintiffs incorporate herein by reference the averments set forth in paragraphs 1 through 51 as if fully rewritten herein.

53.     There currently exists an actual and justiciable controversy between Plaintiffs and Defendants as to whether Plaintiffs' use of the term "Smart Mode" to describe a mode of operation of Plaintiffs' robotic lawnmowers offered for sale in the United States and elsewhere infringes Defendant FGR's purported trademark rights in the term "SmartMow." either as a registered trademark under the '819 Registration or as a common law trademark in one or more

15

of the United States or its territories.  This controversy will be terminated by this Court's declaration as to whether such use is infringing.

54.    Plaintiffs' use of the term "Smart Mode" to describe a mode of operation of their robotic lawnmowers offered for sale in the United States and elsewhere is a use of that term not as a mark but instead is a use of a term that is descriptive of a feature of Plaintiffs' robotic lawnmowers, which is being used fairly and in good faith by Plaintiffs only to describe that feature, and as such, constitutes a protected "fair use" of the term "Smart Mode."

55.    Goods such as consumer electronics, household appliances and outdoor power equipment that have internal data processing and wireless communication capability are commonly referred to in the media as "smart" devices.  A true and correct copy of an article from PC Magazine entitled "The Best Smart Home Devices for 2019" that refers to such goods as "smart" and that specifically includes reference to two different robotic lawnmowers is attached hereto as Exhibit 20.    Robotic lawnmowers been described as "smart mowers" since well before Defendant FGR even applied to register the term "SmartMow" as a mark for robotic lawnmowers.  A true and correct copy of an article from Mansion Global dated in 2017 and entitled "Cutting Edge:  The Latest Lawnmower Technology" that refers to robotic lawnmowers that can be controlled with a smartphone application as "smart mowers" is attached hereto as Exhibit 21.

56.    The manufacturers of robotic lawnmowers commonly refer to their products as "smart" devices.  A true and correct copy of a blog post from robotic lawnmower manufacturer Worx entitled "How to Choose a Smart Lawnmower" describes its own robotic lawnmowers as "smart mowers" and discusses essential "smart mower" features such as "mobile-device control" and "automatic adjustment" is attached hereto as Exhibit 22.    A true and correct copy of a press

16

release from manufacturer Bosch concerning its Indego S+ robotic lawnmower that starts off "S stands for smart" is attached hereto as Exhibit 23.  A true and correct copy of a brochure from manufacturer Gardena that uses the word "smart" to describe its SILENO robotic lawnmower and a number of associated "smart" devices and associated mobile device application is attached hereto as Exhibit 24.

57.     Defendant FGR itself uses the terms "smart moving," "smart" and "smarter" descriptively in connection with its own robotic lawnmowers on its website www.futuregenrobotics.com:

## Smart Mowing, Now Smarter!

Explore a safe and smarter world with the best robotic lawn mower on the market today. Equipped with the latest technology, **SmartMow™** is perfectly designed to do all the dirty work of maintaining your lawn, taking one of the most daunting chores off of your to do list. Whether your garden has a simple lawn, or a more complex area, uneven-ground or even inclined slopes, SmartMow™ can help you achieve a perfect lawn while you relax.

## Why SmartMow™?

The superior quality of SmartMow™ was birth out of an ultimate aim to satisfy the demands of a safe, smart home with professional standards and cutting edge technology. With its simple installation, menu navigation and operation, SmartMow™ has proven to become every modern family's choice. SmartMow™ is a product of FutureGenRobotics LLC which has invented several other patent products.

A true and correct copy of an excerpt of FGR's website including the foregoing admissions against interest is attached hereto as Exhibit 25.

58.     Based on dictionary definitions of the word "smart," the USPTO routinely determines that the word "smart" is descriptive of the goods that are programmed in advance

17

with certain features, such as sensing or self-correcting functions.  For example, the USPTO made such a determination in connection with: (a) a request to register the term SMART CHECK as a mark for a variety of home appliances and outdoor power equipment, including but not limited to "electric lawnmowers"; (b) a request to register the term SMART TREK as  mark for "lawn mower"; and (c) a request to register the term SMART CUT as a mark for "an electronic controller for governing the electrical output of a battery during mowing operation, sold as an integral component of lawn mowers."  True and correct copies of printouts of the records of the USPTO showing that the term SMART had to be disclaimed as descriptive in connection with each of the foregoing requests to register based on dictionary definitions of "smart" are attached hereto as Exhibits 26, 27 and 28.

59.     The word "mode" has a recognized and common meaning and is commonly defined in dictionaries as "a manner, way or method of doing something" and "a manner of action or doing; method; way."  True and correct copies of dictionary definitions of the word "mode" are attached hereto as Exhibits 29 and 30.  The USPTO has made descriptiveness determinations concerning the word "mode" based on such dictionary meanings and as a consequence has either required a disclaimer or offered registration only on the Supplemental Register.  True and correct copies of printouts showing the USPTO's reliance on dictionary definitions of the word "mode" to make such determinations are attached hereto as Exhibits 31 and 32.

60.     Plaintiffs do not use the term "Smart Mode" to identify and distinguish their robotic lawnmowers or the mobile smartphone applications associated therewith from the goods and services of others or to indicate the source of their robotic lawnmowers or associated mobile smartphone applications.  Rather Plaintiffs use their CUB CADET® and ROBOMOW® marks for

their robotic lawnmower product lines, as well as certain product specific marks such as XR3 and RX CLEVER, to identify and distinguish specific robotic lawnmowers in those lines from those of their competitors.  As is evident in the claim Defendant FGR has made against the Challenged Apps (see Exhibit 9), the Challenged Apps are identified by the CUB CADET XR mark and the ROBOMOW mark respectively to distinguish the Challenged Apps from the applications associated with the robotic lawnmowers of their competitors, not the term "Smart Mow."

61.     Rather than using the term "Smart Mode" as a mark in connection with their robotic lawnmowers and associated mobile smartphone applications, Plaintiffs use the term to describe, and only to describe, a specific feature of their robotic lawnmowers, namely, a programmed mode of operation that allows for more efficient mowing by having the mowers execute smooth and continuous turns when sensing that they have reached the edge of designated mowing area instead of stopping and turning more abruptly.  This programmed mode of operation is just one of several modes that can be enabled and otherwise controlled through the use of the Challenged Apps.

62.     The term "Smart Mode" is descriptive of the programmed mode of operation of Plaintiff's robotic lawnmowers that allows the mowers to commence and execute smooth and continuous turns when the mowers approach the edge of the designated mowing area inasmuch as the mowers have the ability to sense their approach to the edge of the designated mowing area and operate according to the "Smart Mode."

63.     Plaintiffs' use of the term "Smart Mode" as a description of the programmed mode of operation in connection with which the term is used by Plaintiffs is an accurate description inasmuch as it is wholly consistent with the commonly understood descriptive

meanings of the words "smart" and "mode."  The "Smart Mode" is "smart" in the sense that it is programmed and is implemented in connection with the sensing and data processing capabilities of Plaintiffs' robotic lawnmowers.  The "Smart Mode" is a "mode" in that it is one of the ways in which Plaintiffs' mowers are capable of operating.

64.    Plaintiffs did not adopt and do not use the term "Smart Mode" with the intent or expectation that its use would cause or would be likely to cause consumer confusion, deception or mistake.

65.    Plaintiffs did not adopt and do not use the term "Smart Mode" with the intent or expectation that by using the term they would benefit or would likely benefit from or exploit any goodwill that Defendant FGR may have in its purported trademark "SmartMow."

66.    Plaintiffs' decision in August 2019 to use and the subsequent use of the term "Smart Mode" to describe a feature of their robotic lawnmowers was and is made in good faith only to describe that feature.

67.    Plaintiffs' use of the term "Smart Mode" is a non-trademark use that is made fairly and in good faith only to describe a feature of Plaintiffs' robotic lawnmowers and as such does not infringe Defendant FGR's purported trademark rights in the term "SmartMow", either as a registered trademark under the '819 Registration or as a common law trademark in one or more of the United States or its territories.

68.    Plaintiffs request an order declaring that Plaintiffs' use of the term "Smart Mode" to describe a programmed mode of operation feature of their robotic lawnmowers offered for sale in the United States and elsewhere does not infringe Defendant FGR's alleged trademark rights in the term "SmartMow,"either as a registered trademark under the '819 Registration or as a common law trademark in one or more of the United States or its territories.   Such a

20

determination is necessary and appropriate at this time in light of the controversy that currently exists between the parties.

## SECOND CLAIM FOR RELIEF

**(Tortious Interference with Business Relationship and Expectancies, Request for Temporary Restraining Order, Preliminary and Permanent Injunction and Monetary Damages)**

69.     Plaintiffs incorporate herein by reference the averments set forth in paragraphs 1 through 68 as if fully rewritten herein.

70.     Plaintiffs have a valid business relationship with owners and/or end-users of CUB CADET brand and ROBOMOW brand robotic lawnmowers, at least some of whom have downloaded one or more of the Challenged Apps for use on Apple Devices.

71.     Plaintiffs have a valid expectancy of a business relationship with prospective owners and/or end-users of CUB CADET® and ROBOMOW® robotic lawnmowers that are also users of Apple Devices.

72.     Plaintiffs have a valid business relationship and/or a valid expectancy of a business relationship with Apple.  Plaintiffs are the owners and/or developers of mobile smartphone applications that they desire to have available in Apple's App Store for download by current and prospective owners and end-users of Plaintiffs' CUB CADET® and ROBOMOW® robotic lawnmowers that are also users of Apple Devices.

73.     On information and belief, Defendants have, and have had at all times material to the Second Claim for Relief, knowledge of Plaintiffs' valid business relationships/expectancies with current and prospective owners and end-users of Plaintiffs' CUB CADET® and ROBOMOW® lawnmowers.

21

74.     On information and belief, Defendants have, and at all times material to the Second Claim for Relief, have had knowledge of Plaintiffs' valid business relationship/expectancies with Apple with regard to the availability of the Challenged Apps in the Apple App Store.

75.     By refusing to authorize the return of the Revised Challenged Apps, which have been purged of the term "SmartMow," after becoming aware that Plaintiffs had purged all appearances of the term "SmartMow" from those Revised Challenged Apps, Defendants are improperly and without privilege or justification interfering with Plaintiffs' valid business relationships/expectancies with Apple and with current and prospective owners and end-users of the Challenged Apps that are also users of Apple Devices.

76.     Plaintiffs have been damaged both economically and reputationally and will continue being damaged as a result of Defendants' conduct complained of herein, and some of the reputational damage is such that it cannot be fully measured or compensated in economic terms and so cannot be adequately remedied at law.  As a result, on information and belief, in addition to economic harm, Plaintiffs have suffered and/or will likely suffer irreparable harm, and this irreparable harm will continue unless Defendants' conduct complained of herein is enjoined during the pendency of this action and thereafter.

77.     On information and belief, Defendant Letsky knowingly induced, caused or materially contributed to Defendant FGR's conduct complained of herein and thus aided and encouraged such conduct.  Accordingly, Defendant Letsky is jointly and severally liable both directly and contributorily for the conduct complained of herein.

78.     On information and belief, Defendant Letsky had the authority and ability to supervise the conduct of Defendant FGR complained of herein, and at all relevant times had an

obvious and direct financial interest in interfering with Plaintiffs' valid business relationships/expectancies with Apple and with current and prospective owners and end-users of Plaintiffs' CUB CADET XR and ROBOMOW lawnmowers.  Accordingly, Defendant Letsky is jointly and severally liable vicariously for the conduct of Defendant FGR complained of herein.

79.    On information and belief, Defendants' conduct complained of herein was undertaken willfully, with ill will, knowingly, intentionally, with malice or with conscious disregard of the rights of Plaintiffs and as such constitutes willful, knowing and intentional malicious conduct.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiffs demand judgment on their claims for relief as follows:

A.    With respect to the First Claim for Relief, an order declaring that Plaintiffs' use of the term "Smart Mode" to describe a mode of operation of their robotic lawnmowers offered for sale in the United States and elsewhere does not infringe Defendant FGR's alleged trademark rights in the term "SmartMow," either as a registered trademark under the '819 Registration or as a common law trademark in one or more of the United States or its territories.

B.    With respect to the First and Second Claims for Relief:

1.    an Order enjoining Defendant Letsky, Defendant FGR, and Defendant FGR's officers, agents, servants, employees, attorneys, as well as any and all other persons in active concert or participation with Defendants who receive actual notice of the Court's Order by personal service or otherwise, temporarily, preliminarily, and permanently from any and all efforts to have mobile smartphone applications that are compatible with Plaintiffs' robotic lawnmowers, including but not limited to the

23

Revised Challenged Apps for Apple Devices, removed or precluded from any third-party store from which mobile smartphone applications can be downloaded, including but not limited to Apple's App Store, on the grounds that Plaintiffs' use of the term "Smart Mode" to describe a mode of operation of Plaintiffs' robotic lawnmowers constitutes an infringement of Defendant FGR's trademark rights in the term "SmartMow," such Order to expressly include an interlocutory order requiring Defendant FGR to immediately authorize Apple to return the Revised Challenged Apps to the App Store and refrain from further efforts to keep the Revised Challenged Apps out of the Apple App Store during the pendency of this Action.

2.    an Order enjoining Defendant Letsky, Defendant FGR, and Defendant FGR's officers, agents, servants, employees, attorneys, and any and all other persons in active concert or participation with Defendants who receive actual notice of the Order by personal service or otherwise, permanently from asserting to third parties, including but not limited to distributors, retailers, end-users and prospective end-users of Plaintiffs' robot lawnmowers, that Plaintiffs' use of the term "Smart Mode" to describe a mode of operation of such robotic lawnmowers is an infringement of Defendant FGR's trademark rights in the term "SmartMow."

C.    With respect to the Second Claim for Relief, an award to Plaintiffs of their actual damages in excess of $75,000, the exact nature and amount of which will be established at trial.

D.    With respect to the Second Claim for Relief, an award to Plaintiffs of punitive damages as may be permitted by law or in the discretion of the Court.

4841-8295-9789, v.1

   E.  With respect to the Second Claim for Relief, an award to Plaintiffs of their reasonable attorneys' fees as may be permitted by law or in the discretion of the Court.

   F.  With respect to the First and Second Claims for Relief, an award to Plaintiffs of their costs incurred in connection with this Action.

   G.  With respect to the First and Second Claims for Relief, an order that awards Plaintiffs such other and further relief as this Court may deem just and proper.

Dated November 20, 2019      Respectfully submitted,

       *s/Raymond Rundelli*
       John S. Cipolla (0043614)
       jcipolla@calfee.com
       Raymond Rundelli (0030778)
       rrundelli@calfee.com
       Alexandra Forkosh (0095633)
       aforkosh@calfee.com
       Calfee, Halter & Griswold LLP
       1405 East Sixth Street
       The Calfee Building
       Cleveland, Ohio 44114
       Phone: (216) 622-8200
       Fax: (216) 241-0816

       *Attorneys for Plaintiffs*

4841-8295-9789, v.1

## **VERIFICATION**

The undersigned hereby states and avers that the facts set forth in the accompanying Verified Complaint For Declaratory Judgment Of Non-Infringement Of A Registered Trademark And For Tortious Interference With Business Relationships And Expectations are based true and correct information provided by employees and representatives of MTD Products Inc. and/or F. Robotics Acquisitions Inc., a wholly-owned subsidiary of MTD Products, Inc., the books and records of MTD Products Inc. and/or F. Robotics Acquisitions Inc., publicly available information, and where applicable, the personal knowledge of the undersigned.

I hereby verify under the penalties of perjury under the laws of the United States of America that the facts set forth herein are true and correct.

Executed this _____20ᵗʰ_____ day of November, 2019.


_____
Rory Bringhurst
Executive     Vice     President,     Product
Development
MTD Products Inc.

4812-7620-2157, v.5

**INDEX OF EXHIBITS**

Exhibit 1.     U.S. Patent No. 9,268,331
Exhibit 2.     FGR's "SmartMow" Trademark Application
Exhibit 3.     FGR's Articles of Organization
Exhibit 4.     Specimen of  Use of Submitted with FGR's Trademark Application
Exhibit 5.     Documents evidencing "Backorder" Status of All SmartMow products
Exhibit 6.     U.S. Trademark Registration No. 5,750,819 -- SmartMow
Exhibit 7.     05/15/2019 Email from Letsky to The Home Depot, Inc.
Exhibit 8.     04/24/2019 Email from Letsky to Wellbots Inc.
Exhibit 9.     05/22/2019 Notice from Apple to F. Robotics Acquisitions Ltd. (FRA)
Exhibit 10.    Apple's App Store Content Dispute Policy Home Page
Exhibit 11.    FGR's 05/29/2019 Cease and Desist Letter
Exhibit 12.    10/03/2019 Email from Letsky to Apple
Exhibit 13.    10/28/2019 Email from Apple to FRA
Exhibit 14.    Screenshots Showing Use of "Smart Mode" In Place of "Smart Mow"
Exhibit 15.    10/31/2019 Email from Plaintiff's Legal Counsel to Apple
Exhibit 16.    10/31/2019 Email from Letsky to Apple
Exhibit 17.    11/6/2019 Email from Plaintiff's Legal Counsel to Apple
Exhibit 18.    11/6/2019 Email from Letsky to Apple Reiterating Refusal
Exhibit 19.    End User of CUB CADET and ROBOMOW Complaints
Exhibit 20.    PC Magazine "The Best Smart Home Devices for 2019"
Exhibit 21.    Mansion Global "Cutting Edge: The Latest Lawnmower Technology"
Exhibit 22.    WORX Blog dated April 5, 2018 "How to Choose a Smart Lawn Mower"
Exhibit 23.    Bosch promotional material "S is for Smart"
Exhibit 24.    Gardena Smart System brochure
Exhibit 25.    Excerpt from Futuregenrobotics.com
Exhibit 26.    USPTO Office Action -- SMART CHECK
Exhibit 27.    USPTO Office Action – SMART TREK
Exhibit 28.    USPTO Office Action – SMART CUT
Exhibit 29.    Dictionary Definition of "mode"
Exhibit 30.    Dictionary Definition of "mode"
Exhibit 31.    USPTO Office Action requiring disclaimer of DUALMODE
Exhibit 32.    USPTO Office Action rejecting DUALMODE as descriptive

4841-8295-9789, v.1